**ORIGINAL**

Of Counsel:
DAVIS LEVIN LIVINGSTON

MARK S. DAVIS            1442-0
MICHAEL K. LIVINGSTON    4161-0
400 Davis Levin Livingston Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
Email: mdavis@davislevin.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT CIRCUIT

FOR THE DISTRICT OF HAWAII

CV08 00025 DAE BMK

| | |
|---|---|
| David Wayne McCraw, individually, Celia Cabase McCraw, individually and David Wayne McCraw, on behalf of minor daughter, Kayla Mae McCraw,<br><br>PLAINTIFFS,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>DEFENDANT. | CIVIL NO.<br>(FEDERAL TORT CLAIMS ACT)<br><br>**COMPLAINT AND SUMMONS TO ANSWER CIVIL COMPLAINT** |

## COMPLAINT

COME NOW Plaintiffs above named, by and through their attorneys, DAVIS LEVIN LIVINGSTON, and for cause of action against the United States of America, allege and aver as follows:

## INTRODUCTION

1. This Complaint is filed pursuant to the provisions of the Federal Tort Claims Act against the United States of America for injuries and damages sustained by Plaintiff Kayla Mae McCraw, and her parents, Plaintiff David Wayne McCraw and Plaintiff Celia Cabase McCraw, during the course of her delivery at Tripler Army Medical Center. While on a fetal monitor, Kayla started experiencing what the attending physician characterized as severe and repetitive decelerations of her heart rate indicating that, for some unknown reason, the child was suffering a deprivation of oxygen that necessitated her immediately delivery by caesarian section. Despite being apprised of the repetitive heart decelerations, the pregnancy was allowed to continue for an additional 10 hours during which time the baby had a reduction of oxygen to her brain. When the baby was finally delivered, it was discovered that the nuchal cord was wrapped around the child's neck and cutting off the flow of oxygen as the child descended through the birth canal. Kayla, needed to be intubated to allow her to breathe. The intubation was inadvertently inserted into her esophagus rather than her trachea where it remained further choking the baby until it was discovered approximately 15 minutes later. As a direct and proximate cause of the Defendants' negligence, Kayla Mae McCraw suffered severe hypoxic ischemic encephalopathy causing persistent seizures, developmental delays, feeding difficulties, vision problems requiring

surgery, motor and cognitive problems. Kayla Mae McCraw has been diagnosed with bilateral cerebral palsy (both sides of the brain) and is at risk of developing hip problems, including painful hip dislocations, limited movement of the hip and may require hip surgery. At nearly 2 years of age Kayla Mae McCraw's motor development is severely abnormal and she still cannot sit up unassisted due to decreased tone in her torso and she wears hand splints due to increased tone in her upper extremities. Kayla Mae McCraw has received continuous physical, occupational and speech therapy since discharge from Tripler Army Medical Center. Said problems would not have occurred but for the negligence of the Defendants in their care and treatment of Celia Cabase McCraw and her daughter, Kayla Mae McCraw.

2. All administrative remedies have been exhausted and Plaintiffs seek damages against the United States of America as more fully described herein.

## JURISDICTION

3. This action arises under the Federal Tort Claims Act, 28 USC §1346(b), 2671, *et seq.* Plaintiffs were citizens of the State of Hawaii at the time of the Defendants' negligence, but currently reside within the State of California.

4. The injuries suffered by the Plaintiffs occurred in the City and County of Honolulu, State of Hawaii.

## PARTIES

5. Plaintiff Celia Cabase McCraw, mother of minor Plaintiff Kayla Mae McCraw and spouse of Plaintiff David Wayne McCraw, is an individual who at the time of the negligence of the Defendants resided within the State of Hawaii and brings this suit in her individual capacity.

6. Plaintiff David Wayne McCraw, father of minor Plaintiff Kayla Mae McCraw and spouse of Plaintiff Celia Cabase McCraw, is an individual who at the time of the negligence of the Defendants resided within the State of Hawaii and brings this suit in his individual capacity and on behalf of his minor daughter, Plaintiff Kayla Mae McCraw.

7. Plaintiff Kayla Mae McCraw, is the minor daughter of Plaintiff Celia Cabase McCraw and Plaintiff David Wayne McCraw and is a individual who at the time of the negligence of the Defendants resided within the State of Hawaii

8. Defendant United States of America is and should be a named Defendant pursuant to and under the provisions of the Federal Tort Claims Act, 28 USC §1346(b), 2671, *et seq.*

9. At all relevant times, the Tripler Army Medical Center personnel who injured the Plaintiffs through their negligent acts and omissions were employed by Defendant United States of America acting in the course and scope of their employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Pursuant to the provisions of the Federal Tort Claims Act, 28 USC §2871, *et seq.*, Plaintiffs filed claims for personal injury against the United States of America within the statutory period as required by law on December 7, 2006. The United States of America acknowledged receipt of the Federal Tort Claims Act forms on December 8, 2006.

11. As of the date of the filing of this complaint, the United States Government has not taken final administrative action on the Plaintiffs' claims and, therefore, this suit is timely filed, pursuant to the provisions of the Federal Tort Claims Act, 28 USC §2871, *et seq.*

12. The Plaintiffs have exhausted all administrative procedures and the Complaint is timely filed.

## FACTUAL ALLEGATIONS

13. The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 12, above, as if fully set forth herein.

14. Celia McCraw was 18 years old when she presented to Tripler Army Medical Center ("TAMC") on November 11, 2005 at approximately 2:02 am with regular contractions. She was estimated to be 39 weeks 4 days along in her pregnancy.

15. On admission to the hospital, Celia McCraw was placed on an external fetal heart rate (FHR) monitor and the FHR was normal evidencing a normal healthy fetus. Later that morning, on November 11, 2005, the FHR began to deteriorate with the FHR decreasing to 60 – 70 BPM for prolonged and repetitive periods.

16. At approximately 8:14 am, a physician was called to evaluate severe decelerations of the fetal heart rate on the fetal monitor. At that time, the Dr. noted that the fetus was not responding well to what she described as *"titanic contractions"* that Celia McCraw was having on the FHR monitor.

17. Throughout the morning and afternoon of November 11, 2005, the fetal monitor showed serious and repeated signs that the fetus was in distress with the heart rate dropping to as low as 60 BPM, which signs were ignored. As the afternoon progressed, the FHR continued to deteriorate indicating a severely distressed fetus and the medical staff continued to ignore them.

18. After nearly 10 hours of repetitive, ominous signs on the monitor with escalating signs of fetal distress, the attending physician finally used an outlet vacuum extractor to delivery the baby's head at 6:08 pm. Once the baby's head was out, the doctor discovered that the reason for the fetal distress was a tight nuchal cord around Kayla McCraw's neck causing asphyxiation.

19. Kayla McCraw was delivered appeared limp, pale, with poor tone and no respiratory effort with meconium stained extremities. Kayla McCraw's Apgars scores were consistent with profound intrauterine asphyxia and cord blood gas indicated Kayla McCraw was born with a severe metabolic acidosis.

20. After delivery, Kayla McCraw's resuscitation efforts were hindered when TAMC staff failed to clamp Kayla McCraw's umbilical cord resulting in unnecessary and excessive blood loss.

21. During Kayla McCraw's resuscitation she required a tube to be placed in her airway to breath (intubation). However, the endotracheal tube was inserted into the esophagus, instead of the trachea, for almost a half hour before the mistake was identified. This error further compromised Kayla McCraw's resuscitation efforts and caused Kayla McCraw further hypoxic injury after delivery.

22. Later that same evening and the next morning, on November 12th, Kayla McCraw began experiencing seizure activity secondary to the profound intrauterine asphyxia she experienced before delivery and the resulting severe metabolic acidosis noted after delivery.

23. On the morning of November 12th (Day of Life # 1), Kayla McCraw was diagnosed with Hypoxic Encephalopathy secondary to severe birth depression and she was being monitored in the Neonatal Intensive Care Unit (NICU) for seizure activity and organ damage secondary to ischemia and poor perfusion.

24. For several days after delivery, Kayla McCraw continued to have evidence of seizure activity. Due to persistent seizure activity, Kayla McCraw was maintained on a maintenance dose of Phenobarbital for her continued seizure activity and a neurological consult confirmed the diagnosis of hypoxic ischemic encephalopathy.

25. Before discharge from TAMC, Kayla McCraw was noted to have a hypotonic tone, a persistent weak gag reflex and suck, nystagmus, a weak moro reflex, no response to glabellar reflex, no response to eyelash or forehead stimulation and she still was unable to "root".

26. After discharge from TAMC, Kayla McCraw continued to exhibit abnormalities in her vision, gross motor control and her tone fluctuated between stiff and hypotonic. Kayla McCraw has been diagnosed with bilateral cerebral palsy (both sides of the brain) and is at risk of developing hip problems, including painful hip dislocations, limited movement of the hip and may require hip surgery. At almost 2 years of age Kayla Mae McCraw's motor development is severely abnormal and she still cannot sit up unassisted due to decreased tone in her torso and she wears hand splints due to increased tone in her upper extremities. Kayla McCraw has received continuous physical, occupational and speech therapy since discharge from Tripler Army Medical Center. Said problems would not have

occurred but for the negligence of the Defendants in their care and treatment of Celia Cabase McCraw and her daughter, Kayla Mae McCraw.

## FIRST CLAIM FOR RELIEF

## MEDICAL NEGLIGENCE

27. The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 26, above, as if fully set forth herein.

28. At all times relevant hereto, Defendant Tripler Army Medical Center, individually and/or through their actual and/or apparent agents/employees, each owed a duty to Plaintiffs to exercise that degree of care, skill and diligence ordinarily exercised by such health care providers in the application of their skills.

29. Defendant Tripler Army Medical Center, individually and/or through their actual and/or apparent agents/employees, breached the aforesaid duty of care to Plaintiffs by failing to properly manage Celia McCraw's labor & delivery, including but not limited to, failing to respond to non-reassuring signs on the fetal monitor, failing to respond to ominous fetal distress and generally failing to protect the health and well being of her fetus.

30. Defendant Tripler Army Medical Center, individually and/or through their actual and/or apparent agents/employees, breached the aforesaid duty of care to Plaintiffs by failing to properly manage Kayla McCraw's resuscitation after birth, including but not limited to, failing to protect her airway by properly

intubating her, failing to have the required equipment available to ensure correct placement of the endotracheal tube, failing to clamp the umbilical cord after delivery resulting in unnecessary blood loss and generally failing to properly resuscitate Kayla McCraw after birth.

31.  As a direct and proximate result of the Defendants' negligence, as aforesaid, Kayla McCraw has been diagnosed with bilateral cerebral palsy and has suffered severe injuries, including but not limited to hypoxic ischemic encephalopathy, persistent seizures, developmental delays, feeding difficulties, vision problems requiring surgery, motor and cognitive problems.  As a result, Kayla McCraw has suffered pain and suffering, severe emotional distress, loss of enjoyment of life, loss of consortium and economic loss, and caused her parents, Plaintiff David McCraw and Plaintiff Celia McCraw, to suffer severe emotional distress and loss of consortium.  Plaintiffs therefore are entitled to recover special and general damages in an amount sufficient to compensate them for the aforementioned devastating injuries and losses.  Plaintiff is entitled to receive special damages sufficient to compensate them for their past and future economic losses, including reasonable compensation for the special care she will need in the future to Kayla McCraw as necessitated by Defendants' negligence.

## SECOND CLAIM FOR RELIEF

### PARENTS' CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

32. The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 31, above, as if fully set forth herein.

33. As a direct and proximate result of Defendants' negligence, as aforesaid, and the catastrophic injuries caused to their daughter, Plaintiff Kayla McCraw, Plaintiff David McCraw and Plaintiff Celia McCraw have suffered severe mental and emotional anguish and distress and other damages arising out of Defendant's negligent infliction of emotional distress..

34. Plaintiff David McCraw and Plaintiff Celia McCraw are entitled to recover general damages in an amount sufficient to compensate them for their severe anguish and emotional distress.

## THIRD CLAIM FOR RELIEF

### PARENTS' CLAIM FOR LOSS OF CONSORTIUM AND MEDICAL AND LIFE CARE EXPENSES

35. The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 34, above, as if fully set forth herein.

36. As a direct and proximate result of Defendants' negligence, as aforesaid, and the catastrophic injuries caused to their daughter, Plaintiff Kayla McCraw, Plaintiff David McCraw and Plaintiff Celia McCraw have suffered loss

of consortium. Additionally, Plaintiff David McCraw and Plaintiff Celia McCraw have incurred and will continue to incur medical and life care expenses associated with the treatment and care of their daughter, Kayla McCraw.

37. Plaintiff David McCraw and Plaintiff Celia McCraw are entitled to recover general damages in an amount sufficient to compensate them for their loss of consortium, and special damages sufficient to compensate them for their past and future economic losses, including reasonable compensation for the special care they have provided and will continue to provide to Kayla McCraw as necessitated by Defendants' negligence.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant United States of America for general and special damages in an amount to be proved at trial. Plaintiffs further pray that they be awarded their costs of suit and such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawaii, January 16, 2008.

_____
MARK S. DAVIS
MICHAEL L. LIVINGSTON
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT CIRCUIT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| David Wayne McCraw, individually, Celia Cabase McCraw, individually and David Wayne McCraw, on behalf of minor daughter, Kayla Mae McCraw,<br><br>PLAINTIFFS<br><br>VS.<br><br>UNITED STATES OF AMERICA,<br><br>DEFENDANT. | CIVIL NO.<br>(FEDERAL TORT CLAIMS ACT)<br><br>**SUMMONS TO ANSWER CIVIL COMPLAINT** |

### SUMMONS TO ANSWER CIVIL COMPLAINT

TO THE DEFENDANT:

You are hereby summoned and required to serve upon Plaintiffs' attorney, whose address is **DAVIS LEVIN LIVINGSTON, 400 DAVIS LEVIN LIVINGSTON PLACE, 851 FORT STREET, HONOLULU, HAWAII 96813** an answer to the Complaint which is herewith served upon you, within sixty (60) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the

above-entitled court permits, in writing on this Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii        JAN 1 6 2008        .

SUE BEITIA
CLERK OF THE ABOVE-ENTITLED COURT

Deputy Clerk, United States District of Hawaii

2